IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KLEVINA K. DAJTI, | : | CIVIL ACTION |
| on behalf of herself and all others similarly | : | |
| situated | : | |
| | : | |
| v. | : | |
| | : | |
| PENN COMMUNITY BANK | : | NO. 20-1483 |

**MEMORANDUM**

Padova, J.                                                         **March 31, 2021**

Plaintiff brings this action against her former employer, Penn Community Bank ("PCB"),

alleging that she was unlawfully terminated after she complained to PCB's Human Resources

Department ("HR") about PCB's impeding her ability to breastfeed her newborn baby and care for

her disabled son.  She asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C.

2000e(k)[1] in Count I; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951

et seq. in Count II; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. in

Count III; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. in Counts IV and VI;

and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. in Count V.  PCB

---

[1] Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "because of" or "on the basis of" sex, among other protected classes. See 42 U.S.C. § 2000e-2.  In 1978, Congress enacted the Pregnancy Discrimination Act ("PDA"), amending Title VII's definition section to define the terms "because of sex" and "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C.A. § 2000e(k). The PDA further amended Title VII to specify that women affected by pregnancy, childbirth, or related medical conditions "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." Id.

Maldonado-Torres v. Customized Distribution Servs., Inc., Civ. A. No. 19-400, 2020 WL 5645686, at *5 (E.D. Pa. Sept. 21, 2020).

moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, we deny PCB's Motion to Dismiss in its entirety.

## I.     BACKGROUND

The Complaint asserts the following facts.  Plaintiff Klevina Dajti worked in various managerial positions at PCB for more than three years, during which time she "maintained an unblemished record," "received annual bonuses and salary increases," and was always given "great customer ratings and terrific annual reviews."  (Id. ¶¶ 1, 33, 65.)  In February 2018, Plaintiff's son was diagnosed with leukemia.  (Id. ¶¶ 1, 66.)  As a result, he required chemotherapy treatments every Thursday.  (Id. ¶ 34.)  In April 2018, Plaintiff gave birth to her second child and took FMLA leave.  (Id.)  In addition to her FMLA leave, Plaintiff took four weeks of unpaid leave in order to care for her older son.  (Id.)  While she was on her extended leave, she was asked by both her supervisor, K.M., and HR whether she planned to pump breast milk after she returned to work. (Id. ¶ 53.)  Plaintiff "unequivocally notified them that she would . . . and would require a designated lactation room at the Branch."  (Id.)

However, when Plaintiff returned to work on August 6, 2018, there was no designated lactation room.  (Id. ¶¶ 46, 50, 53.)  Rather, she was expected to drive home on her lunch break (which lasted between 45 minutes and an hour), pump breast milk, eat lunch, and drive back to work.  (Id. ¶¶ 48-49, 53.)  Another PCB employee had encountered similar issues finding a place to pump breast milk at the same Branch of PCB in 2017.  (Id. ¶ 51.)  K.M. initially asked this employee to pump outside of Branch premises, but the employee lived too far away to travel home during her break.  (Id.)  To accommodate that employee, PCB "used an old and filthy storage room in the Branch as the 'designated lactation room' by putting up a portable room divider to hide the

camera from capturing this other employee's pumping session." (Id.)  The employee complained to PCB several times, but nothing was done, and the employee quit.  (Id.)  When Plaintiff returned to work after her extended leave, this storage room could no longer be used as a lactation room because "the previous portable wall had been removed in about mid-2017" and there "was no space . . . to add anything new."  (Id. ¶ 53.)

After Plaintiff began using her 45-minute break to go home to pump, K.M. complained to PCB that she was unable to handle the Branch's customers by herself when Plaintiff left the Branch to pump, and K.M. demanded Plaintiff take a 30-minute break instead.  (Id. ¶ 49.)  Plaintiff could not return home to pump during this shorter break time and, as a result, had to pump in the Branch's kitchen, and other Branch employees complained that they were unable to use the kitchen while Plaintiff was using it to pump.  (Id. ¶¶ 49, 55-56.)  In addition, K.M. "was highly uncooperative" in accommodating Plaintiff's lactation breaks.  (Id. ¶ 37.)  Plaintiff made "many attempts to address this breast feeding dilemma with HR and K.M.," and on October 22, 2018, HR representative Kristen Palmieri went to Plaintiff's Branch "to review the issue."  (Id. ¶ 54.)  Palmieri stated that she "was not aware of the situation and was not informed of the details by [K.M.] as [she] should have been."  (Id.) (first alteration in original).  In early November 2018, PCB modified a bathroom to be used as a lactation room by removing the toilet and adding a chair. (Id. ¶ 55.)

Meanwhile, K.M. "frequently made negative and harassing comments [to Plaintiff]" about breastfeeding and about the number of breaks Plaintiff needed.  (Id. ¶¶ 60, 62.)  Plaintiff was forced to tolerate these critical and harassing remarks made by K.M. for two months in order to avoid retaliation because K.M. controlled Plaintiff's schedule.  (Id. ¶¶ 60-61.)  Moreover, during the three years Plaintiff worked at PCB, eight Branch employees quit, seven of whom were females,

two female employees transferred to a different Branch, and one employee "was fired shortly after his wife gave birth to a second child." (Id. ¶ 32.)

K.M. also made "[h]arsh, abusive and callous comments to Plaintiff regarding Plaintiff's older son who suffered from leukemia" and about the time Plaintiff needed to take off of work in order to bring her son to his chemotherapy appointments.  (Id. ¶¶ 46-47, 66.)  After Plaintiff returned to work from her leave in August 2018, she continued to take her son to his chemotherapy appointments using her accrued personal time off ("PTO").  (Id. ¶ 35.)  Rather than adjust Plaintiff's work schedule to make it easier for her to take her son to his chemotherapy appointments, HR and K.M. "gave her a difficult and troublesome time when Plaintiff's weekly day off was necessary." (Id. ¶ 46.)  Plaintiff worked every Saturday in order to earn sufficient PTO to take time off during the week to take her son to his appointments. (Id.)  Plaintiff was also put under extraordinary scrutiny by K.M. "and was given and did more work just to make sure that she was given her day off when needed to help her son and his hospital needs." (Id. ¶ 58.)  K.M "pressured [Plaintiff] to work more time including Thursdays and Saturdays" which substantially interfered with her ability to care for her older son's medical needs.  (Id. ¶ 36.)  K.M. also challenged Plaintiff's need to take time off to assist her elder son with his medical needs in front of other PCB employees.  (Id. ¶ 47.)

Plaintiff "raised her concerns with [HR] regarding the difficulties she was encountering in expressing her breast milk and attending to her son's needs." (Id. ¶ 38.)  On November 14, 2018, after Plaintiff raised her concerns with HR, K.M. lodged a "Corrective Action notice" against Plaintiff. (Id. ¶ 39.)  Plaintiff disputed the Corrective Action notice and met with HR on November 19, 2018.  (Id. ¶ 40.)  During this meeting with HR, Plaintiff "was asked . . . about information that had been received by PCB from another Branch team member that K.M. was performing

unauthorized transactions." (Id. ¶ 40.)  Plaintiff confirmed that K.M. had in fact performed unauthorized transactions, and K.M. was terminated. (Id.)

HR instructed employees at Plaintiff's PCB Branch not to discuss the nature of K.M.'s departure with customers and told them "that if a customer asked to speak with K.M. they were to respond only that she was no longer with [PCB]." (Id. ¶ 41.)  According to PCB, K.M. subsequently called them and complained that Plaintiff had provided information to two customers regarding K.M.'s separation, specifically, that K.M. had been fired. (Id. ¶ 42.)  During a meeting on November 29, 2018, HR Representative Georgeann McKenna informed Plaintiff "that 'a bank customer called in to complain about [Plaintiff] informing the customer that K.M. had been fired or let go[']" (Id. ¶ 63.)  PCB maintains that it investigated K.M.'s complaints and allegedly spoke "with at least one of those customers who confirmed that [Plaintiff] had done as K.M. complained." (Id. ¶ 43.)  However, there was no further "discussion by PCB representatives with [Plaintiff] about those claims." (Id.)  Rather, Plaintiff was terminated during the November 29, 2018 meeting "pretextually and without basis and full and fair investigation . . . allegedly for putting PCB at risk and jeopardizing its relations with its customers." (Id.)  Plaintiff denies that she made any comments regarding K.M. to any customer, and instead, believes that K.M. "colluded with a customer to create the claim against [Plaintiff]" in "revenge for [Plaintiff] confirming that K.M. broke PCB security protocols." (Id. ¶ 44.)

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), we "'consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d

223, 230 (3d Cir. 2010)).  We accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  However, we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The complaint must set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  We deny a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555) (additional citations omitted).

### III.   DISCUSSION

A.   Title VII and PHRA Claims

Counts I and II of the Complaint assert that PCB violated Title VII and the PHRA by discriminating against her on the basis of her pregnancy and by firing her in retaliation for her complaints about that discrimination.[2]

*1.   Title VII and PHRA Discrimination*

The Complaint alleges that PCB discriminated against Plaintiff in violation of Title VII and the PHRA because it failed "to make any meaningful accommodation for . . . expressing breast milk during the workday," "imped[ed] . . . [Plaintiff from] using a private and secure location to express her breast milk," and treated Plaintiff differently from other, non-breastfeeding employees with regard to break time.  (Compl. ¶¶ 69-70, 74.)  "Title VII prohibits employment discrimination because of or based on . . . an . . . employee's sex."  Anderson v. Boeing Co., 694 F. App'x 84, 86 n.3 (3d Cir. 2017) (citing 42 U.S.C. § 2000e–2(a)).  The PDA amended Title VII to "make[] clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy.  It also says that employers must treat 'women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work.'"  Young v. United Parcel Serv., Inc., 525 U.S. 206, 135 S. Ct. 1338, 1343 (2015) (citing 42 U.S.C. § 2000e(k)).[3]

---

[2] Plaintiff's Title VII and PHRA claims are analyzed together.  See Woodson v. Scott Paper Co., 109 F.3d 913, 919-20 (3d Cir. 1997); see also Keita v. Delta Cmty. Supports, Inc., Civ. A. No 19-5967, 2020 WL 6528749, at *2 (E.D. Pa. Nov. 5, 2020) ("The relevant provisions of each statute have 'nearly identical language,' and require the same elements to establish a prima facie claim." (quoting Driscoll v. Lincoln Tech. Inst., 702 F. Supp. 2d 542, 545-46 (E.D. Pa. 2010))).

[3] "While the Third Circuit has not expressly resolved whether 'a complaint based [solely] on the need to express breast milk is cognizable under Title VII,' other courts have so held." Mercado v. Sugarhouse HSP Gaming, L.P., Civ A. No. 18-3641, 2019 WL 3318355, at *5 (E.D.

The Complaint does not allege direct evidence of discrimination; therefore, Plaintiff's discrimination claims are subject to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Young, 135 S. Ct. at 1345 (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)). A complaint may state a prima facie case that the denial of an accommodation constituted disparate treatment under Title VII or the PHRA by alleging the following four factors: (1) "that [the plaintiff] belongs to the protected class," (2) "that she sought accommodation," (3) "that the employer did not accommodate her," and (4) "that the employer did accommodate others 'similar in their ability or inability to work.'" Id. at 1354. However, a complaint may also satisfy the nexus element of a prima facie claim (the fourth factor) if it alleges facts that "otherwise show[] a causal nexus between [Plaintiff's] membership in a protected class and the adverse employment action.'" Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (citation omitted).

PCB argues that the Complaint does not state a claim of discrimination in violation of Title VII or the PHRA because the Complaint does not identify non-breastfeeding PCB employees who were treated more favorably than Plaintiff. However, as noted above, the Complaint need not identify other employees who were treated more favorably if it "otherwise shows a causal nexus between [Plaintiff's] membership in a protected class and the adverse employment action." Greene, 557 F. App'x at 195 (citation omitted). The Complaint alleges that, before Plaintiff

---

Pa. July 23, 2019) (alteration in original) (citing Page v. Trustees of Univ. of Pa., 222 F. App'x 144, 145 (3d Cir. 2007), E.E.O.C. v. Houston Funding II, Ltd., 717 F.3d 425, 428 (5th Cir. 2013); Hicks v. City of Tuscaloosa, Alabama, 870 F.3d 1253, 1259 (11th Cir. 2017)). For example, the Fifth Circuit has noted, "lactation [is an] aspect[] of female physiology that [is] affected by pregnancy, . . . [and] readily . . . fit[s] into a reasonable definition of 'pregnancy, childbirth, or related medical conditions.'" Houston Funding, 717 F.3d at 430. Therefore, for the purposes of this Motion, we assume that claims related to the need to express breast milk are cognizable under Title VII.

returned to work in August of 2018, she notified HR and K.M. several times that she would be breastfeeding until her baby turned one and that she would need a designated lactation room at the PCB Branch where she worked when she returned.  (Compl. ¶¶ 52-53.)  The Complaint further alleges that, after Plaintiff returned to work, she "was only given the option to go home to pump her breasts since there allegedly was no space in the Branch" to add a designated lactation room.  (Id. ¶ 53.)  The Complaint adds that, once K.M. complained that she was unable to keep up with the customers while Plaintiff traveled home to pump, Plaintiff was forced to pump her breasts in a communal kitchen.  (Id. ¶¶ 49, 55-56.)  The Complaint also alleges that, during this time, K.M. made disparaging comments to Plaintiff about breastfeeding while other PCB staff were present.  (Id. ¶¶ 60, 62.)  The Complaint further alleges that PCB did not provide Plaintiff with a lactation room until November 2018, when it modified one of the Branch's two bathrooms by removing the toilet and adding a chair and that, even after PCB made this modification, K.M. remained "highly uncooperative" in accommodating Plaintiff's requests for breaks to pump breast milk.  (Id. ¶¶ 37, 55.)

The Complaint also alleges additional facts that suggest that PCB has a history of discrimination against pregnant or lactating employees.  The Complaint notes that a former PCB employee was asked to pump outside of Branch premises, but because the employee lived too far to commute, it was impossible for her to travel home.  (Id. ¶ 51.)  In that case, PCB "used an old and filthy storage room in the Branch as the 'designated lactation room' by putting up a portable room divider to hide the camera from capturing this other employee's pumping session."  (Id.)  The employee quit soon after PCB failed to rectify this situation.  (Id.)

PCB also argues that the Complaint cannot allege the requisite nexus between Plaintiff's membership in a protected class and her termination because K.M. was fired before Plaintiff.

However, "[t]he Third Circuit has held that a plaintiff may demonstrate that the decision to terminate her was likely motivated by discriminatory animus where 'those exhibiting discriminatory animus influenced or participated in the decision to terminate.'" Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812, 819 (E.D. Pa. 2009) (quoting Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 285-86 (3d Cir. 2001)). As we discussed above, the Complaint alleges that K.M. influenced the decision to terminate Plaintiff by "collud[ing] with a customer." (Id. ¶ 44.) Moreover, Plaintiff's discrimination claims do not rest solely on the actions of K.M. The Complaint also alleges that PCB failed to provide Plaintiff with a designated lactation room when she returned to work, even though Plaintiff informed HR numerous times that she would require one, and that, despite Plaintiff's complaints to HR, PCB failed to remedy Plaintiff's lack of lactation space until November 2018, three months after Plaintiff returned to work and after Plaintiff had been forced to use the common kitchen area to pump breast milk. (Compl. ¶¶ 38, 53, 55-56.) PCB fired Plaintiff soon after finally creating a designated lactation space, even though she had a great employment record without any prior issues. PCB claimed that it was terminating her because she had disclosed information to a customer regarding K.M.'s termination even though it did not discuss this incident with Plaintiff or perform a full and fair investigation prior to her termination. (See id. ¶¶ 43, 65.) Construing the allegations of the Complaint in the light most favorable to Plaintiff, we conclude that the Complaint plausibly alleges a causal nexus between Plaintiff's membership in a protected class (here, pregnant and breastfeeding women), and PCB's decision to terminate her. Therefore, we conclude that the Complaint plausibly alleges a claim of discrimination in violation of Title VII and the PHRA and we deny PCB's Motion to Dismiss as to these claims alleged in Counts I and II of the Complaint.

### 2.  Title VII and PHRA Retaliation

Plaintiff also asserts retaliation claims under the Title VII and the PHRA.[4]  A complaint asserting retaliation claims under Title VII and the PHRA must allege the following: "(1) that [the plaintiff] engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) 'adverse action by the employer either after or contemporaneous with the employee's protected activity'; and (3) a causal connection between the protected activity and the adverse action.'"  Moore v. Sec'y U.S. Dep't of Homeland Sec., 718 F. App'x 164, 166 (3d Cir. 2017) (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015).  PCB argues that Plaintiff's claims of retaliation in violation of Title VII and the PHRA must be dismissed because the Complaint fails to allege facts which, if true, would satisfy the first and third elements of a retaliation claim.

First, PCB maintains that Plaintiff's retaliation claims fail because the Complaint does not adequately plead that she engaged in a protected activity.  However, "[p]rotected activity includes oral and written complaints and protests, whether formal or informal, to discriminatory practices prohibited by the statute."  Parker v. Philadelphia Newspapers, Inc., 322 F. Supp. 2d 624, 630 (E.D. Pa. 2004) (citing Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 287-88 (3d Cir. 2001)); see also Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011) (finding that oral complaints can constitute protected activity in the context of the National Labor Relations Act).  Here, the Complaint states that Plaintiff contacted HR and raised her concerns about the difficulties she was having with pumping breast milk and attending to her older child's medical needs.  (Compl. ¶ 38.)  The Complaint also alleges that Plaintiff "made many attempts to

---

[4] Plaintiff's Title VII and PHRA retaliation claims are also analyzed together.  See Woodson, 109 F.3d at 920 ("[T]he burden of proof for both the federal and state retaliation claims follows the familiar Title VII standards.") (citations omitted).

address" with HR her problems with not being given either a designated lactation room at the Branch or time to go home to pump breast milk. (Id. ¶ 54.)  Therefore, we conclude that her oral complaints to HR constitute protected activity.  See Abramson, 260 F.3d at 287-88.

PCB also argues that the Complaint fails to allege a causal connection between Plaintiff's engagement in protected activity, i.e. complaining to HR, and her termination.   A causal connection may be shown by "an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive."   Smith v. RB Distribution, Inc., Civ. A. No. 20-900, 2020 WL 6321579, at *10 (E.D. Pa. Oct. 28, 2020) (citing Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 260 (3d Cir. 2017)).   "[T]here is no bright line rule as to what constitutes un[usually] suggestive temporal proximity . . . ."   LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007).   However, the Third Circuit "ha[s] held that a temporal proximity greater than ten days" is not, by itself, unusually suggestive.   Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).   Where "there is no unusually suggestive temporal proximity, courts look to 'the intervening period for . . . circumstantial evidence . . . that give[s] rise to an inference of causation when considered as a whole."   Ellingsworth v. Hartford Fire Ins. Co., 247 F. Supp. 3d 546, 557 (E.D. Pa. 2017) (alterations in original) (quoting Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)); see also Smith, 2020 WL 6321579, at *10 (noting that, where the plaintiff cannot produce evidence of "an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity, . . .the evidence may, when taken as a whole, suffice to raise the inference.").

The Complaint alleges that Plaintiff notified HR and K.M. several times during the summer of 2018 that she intended to breastfeed her baby until the baby was a year old.  (Compl. ¶ 52.)

Plaintiff also informed K.M. and HR during her four weeks of extended leave before she returned to work in August 2018 that she would need to pump breast milk at work and required a designated lactation room at the Branch where she worked.  (Id. ¶ 53.)  As we discussed above, the Complaint also alleges that, after Plaintiff returned to work, she complained to HR and K.M. about her concerns regarding the difficulties she was having with respect to pumping milk at the Branch. (Id. ¶¶ 38, 54.)  The Complaint further alleges that K.M. took corrective action against Plaintiff on November 14, 2018, after Plaintiff made these complaints to HR.  (Id. ¶ 39.)  Plaintiff was fired just over two weeks later on November 29, 2018.  (Id. ¶ 1.)

Since the allegations of temporal proximity in this case are "not so abbreviated as to be unusually suggestive of causation . . . [we] will look to the intervening period to see whether there is other evidence that may support a showing of causation, including antagonistic conduct or animus against the employee, or pretextual reasons given by the employer for the adverse conduct." Romanaskas v. Earthbox, Inc., No. 16-517, 2018 WL 1370876, at *4 (M.D. Pa. Feb. 23, 2018), (citing Marra, 497 F.3d at 302; Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)).  The Complaint alleges the following facts pertinent to our analysis.  Initially, even though Plaintiff notified HR and K.M. numerous times of her intensions to breastfeed upon her return to work, and her need for a dedicated lactation room, there was no lactation space when Plaintiff returned to PCB.  (Compl. ¶¶ 52-53.)  When Plaintiff returned to work, K.M. was highly uncooperative in accommodating her need to express breast milk and commented critically on the birth of her child.  (Id. ¶ 37.)  "[A]fter many attempts to address [her] breast feeding dilemma with HR and K.M.," an HR representative came to the bank on October 22, 2018 in order "to review the issue" and stated that she was not made "aware of the situation . . . as [she] should have been." (Id. ¶ 54.)  In addition, "K.M. . . . frequently made negative and harassing comments about

[Plaintiff] needing more breaks" and about breastfeeding being unnecessary. (Id. ¶¶ 60, 62.) More specifically, K.M. told Plaintiff that "baby formula is enough . . . and mothers who still breastfeed are very old-school and impractical." (Id. ¶ 62.) When Plaintiff complained to HR "regarding the difficulties she was encountering in expressing her breast milk and attending to her son's medical needs," K.M. lodged a corrective action notice against Plaintiff and she was fired within a month. (Id. ¶¶ 38, 43.)

PCB maintains, however, that K.M.'s comments and actions are irrelevant because she was fired before Plaintiff's termination and "stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision." Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)). The "stray remarks" referenced in Brewer were "made almost two years" before the plaintiff's termination. Id. In the instant case, however, K.M., who was Plaintiff's supervisor until shortly before Plaintiff's termination, is alleged to have made remarks critical of Plaintiff's decision to breastfeed her infant within a few months of Plaintiff's termination. (Compl. ¶ 62.) K.M. also criticized Plaintiff for needing break time to express breast milk, both at home and at the Branch. (Id. ¶¶ 37, 49.) K.M.'s complaints eventually resulted in Plaintiff having to take shorter breaks, making it harder for her to express breast milk. (Id. ¶ 49.) Thus K.M.'s criticisms of Plaintiff's decision to breastfeed her child and need to express breast milk do not appear to be "stray remarks" that are temporally remote from the date of and "unconnected with . . . the decision-making process which resulted in" Plaintiff's termination. Brewer, 72 F.3d at 333. Moreover, although the Complaint alleges that K.M. was fired prior to Plaintiff's termination, it also alleges that K.M. nevertheless influenced the decision to terminate

14

Plaintiff by "collud[ing] with a customer" to fabricate a story to have her fired.  (Compl. ¶ 44.)

Thus, accepting the facts in Plaintiff's Complaint as true and drawing all reasonable inferences in

favor of the plaintiff, DelRio-Mocci, 672 F.3d at 245 (citation omitted), we find that the allegations

plausibly "give[] rise to an inference of causation" between Plaintiff's complaints to HR and her

termination.  Ellingsworth, 247 F. Supp. 3d at 557.  As a result, we deny the Motion to Dismiss as

to Plaintiff's claims of retaliation in violation of Title VII and the PHRA in Count I and II.

      B.    ADA Claims

      Count III of the Complaint asserts that PCB violated the ADA by discriminating against

Plaintiff based on the fact that her son suffers from cancer.[5]  PCB asks us to dismiss this claim on

the ground that the Third Circuit's decision in Erdman v. Nationwide Insurance Co., 582 F.3d 500

(3d Cir. 2009), precludes Plaintiff's associational discrimination claim.  PCB also argues that this

claim should be dismissed because the Complaint fails to plausibly allege that Plaintiff's son's

cancer was a determining factor in her termination.

      The Complaint asserts that PCB violated §§ 12112(b)(4) and 12182(b)(1)(E) of the ADA.

Section 12112(b)(4) prohibits an employer from "denying equal jobs or benefits to a qualified

individual because of the known disability of an individual with whom the qualified individual is

known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  Section 12182(b)(1)(E)

prohibits discrimination against "an individual or entity because of the known disability of an

individual with whom the individual or entity is known to have a relationship or association."  42

---

[5] Count III also asserts a claim that Plaintiff was retaliated against for seeking a reasonable accommodation to allow her to provide care for her son with cancer.  PCB does not mention Plaintiff's ADA retaliation claims in its Motion to Dismiss.  Accordingly, we assume that PCB does not seek dismissal of this retaliation claim.

U.S.C. § 12182(b)(1)(E).   To state a claim for violation of these sections, a complaint must plausibly allege the following:

> (1) the plaintiff was 'qualified' for the job at the time of the adverse employment action; (2) [she] was subjected to an adverse employment action; (3) the plaintiff was known by [her] employer at the time [of the adverse employment action] to have a relative or an associate with a disability; [and] (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 83 n.8 (3d Cir. 2019) (third alteration in original) (quoting Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997) (additional citations omitted)).   A plaintiff can meet the fourth element by showing that "an adverse employment action was 'motivated by unfounded stereotypes or assumptions about the need to care for a disabled person . . . .'"   Id.  (quoting Erdman, 582 F.3d at 511 & n.7)).

PCB contends that the Third Circuit's decision in Erdman precludes Plaintiff's claim because, in noting that the association provision of the ADA does not require "employers to accommodate the schedule of an employee with a disabled relative," the Third Circuit stated that "the plain language of the ADA indicates that the accommodation requirement does not extend to relatives of the disabled."   Erdman, 582 F.3d at 510 (citing 29 C.F.R. § 1630.8, Appendix). Erdman's language did not obviate the possibility that an individual could bring an associational discrimination claim, it just limited those claims to situations in which a plaintiff could "show that [the employer] was motivated by [the relative's] disability rather than by [the plaintiff's] stated intention to miss work; in other words, that she would not have been fired if she had requested time off for a different reason."   Id. (citation omitted).

Plaintiff maintains that her ADA claim is not precluded by Erdman because the factual allegations of the Complaint raise a reasonable inference that her son's disability, not her need to

take time off of work, was a determining factor in her termination.  The Complaint alleges that Plaintiff was fired while she was dealing with the care and treatment of her son's leukemia and that she was "put under extraordinary scrutiny by K.M." and harassed by K.M. following "the onset of her son's illness . . . solely because [she] sought [to] care for her seriously ill four year old son . . . ." (Compl. ¶¶ 1, 58.)  After Plaintiff returned from leave in August of 2018, K.M. made "[h]arsh, abusive and callous comments" regarding Plaintiff's need to take care of her disabled son.  (Id. ¶ 47.)  K.M. criticized Plaintiff in front of other PCB employees for using her PTO to take her son for his chemotherapy appointments and also required her to work on Thursdays, even though she knew that Thursdays were the days that Plaintiff used her PTO to take her son to his chemotherapy appointments.  (Id. ¶¶ 34-36, 47.)  After colluding with a customer, K.M. contacted PCB to complain that Plaintiff had provided the customer with information about K.M. being fired, which led to Plaintiff's termination.  (Id. ¶¶ 42-43.) Accepting these factual allegations as true and drawing all reasonable inferences in favor of the plaintiff, DelRio-Mocci, 672 F.3d at 245 (citation omitted), we conclude that the Complaint alleges sufficient facts to plausibly state a claim that Plaintiff's son's cancer was a determining factor in PCB's decision to terminate Plaintiff. Therefore, we deny PCB's Motion to Dismiss Plaintiff's associational disability claim in Count III.

      C.    FLSA Claims

Count IV of the Complaint asserts that PCB violated § 207(r) of the FLSA by refusing "to timely provide Plaintiff with a functional designated lactation place and lactation break time." (Compl. ¶ 84.)  Count IV also alleges that PCB retaliated against Plaintiff in violation of § 215(a)(3) of the FLSA by firing her for complaining about the lack of a designated lactation space. (Id.)  Plaintiff seeks compensation for her lost earnings and benefits, as well as non-economic

damages as a result of Defendant's failure to timely provide a functional lactation room at the PCB Branch where she was employed.  (Id. ¶ 86.)  In addition, Count VI asserts a collective action for violation of § 207(r).  (Id. ¶ 94.)

       *1.  Section 207(r)*

Section 207(r) of the FLSA requires employers to provide a lactation break for their employees, but it does not require employers to pay their employees for lactation breaks.  The statute provides as follows:

(1)    An employer shall provide—

    (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and

    (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

(2)    An employer shall not be required to compensate an employee receiving reasonable break time under paragraph (1) for any work time spent for such purpose.

29 U.S.C. § 207(r)(1) & (2).  Moreover, pursuant to the FLSA's damages provision, if an employer violates § 207(r), a plaintiff may only recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

PCB argues that we should dismiss Plaintiff's FLSA claim on the ground that Count IV of the Complaint fails to allege a compensable injury under § 207(r).  PCB maintains that Plaintiff is not entitled to her lost wages on compensation for her non-economic damages because § 216(b) limits damages for violations of the FLSA to unpaid minimum and overtime wages, and PCB was not required to compensate Plaintiff for her break time spent pumping breast milk.  See Mayer v.

Prof'l Ambulance, LLC, 211 F. Supp. 3d 408, 414-15 (D.R.I. 2016) (stating that "[t]he case law and guidance from DOL make clear that the only remedy for a violation of Section 207(r) is for unpaid minimum or overtime wages"). PCB relies on the following notice promulgated by the Wage and Hour Division of the Department of Labor:

> Section 7(r) of the FLSA does not specify any penalties if an employer is found to have violated the break time for nursing mothers requirement. In most instances, an employee may only bring an action for unpaid minimum wages or unpaid overtime compensation and an additional equal amount in liquidated damages. 29 U.S.C. 216(b). Because employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks.

Reasonable Break Time for Nursing Mothers, 75 Fed. Reg. 80073-01 (Dep't of Labor) (notices). (emphasis added). We recognize that an agency's interpretation of its regulations is entitled to deference. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 865 (1984); see also Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc., 873 F.3d 420, 427 (3d Cir. 2017) (stating that "[a]n agency's interpretation of a statute 'may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency" and noting that "[t]he weight afforded the agency's interpretation 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control'" (quoting first De Leon-Ochoo v. Att'y Gen. U.S., 622 F.3d 341, 349 (3d Cir. 2010); and United States v. Mead Corp., 53 U.S. 218, 228 (2001))). A department's interpretation of a statute found in an opinion letter, a policy statement, an agency manual, or enforcement guidelines, "lack[s] the force of law," and, therefore, does "not warrant Chevron-style deference." Christensen v. Harris Cty, 529 U.S. 576, 586 (2000). Rather, a notice such as the one on which PCB relies, is "entitled to respect' . . . only to the extent that [it has] the power to persuade." Id.

(quotation omitted). We are not persuaded that the notice, which itself states only that "*in most instances*, an employee may only bring an action for unpaid minimum wages or unpaid overtime compensation" dictates the outcome in this case.  75 Fed. Reg. 80073-01 (emphasis added).

Notably, the United States Court of Appeals for the Third Circuit has not addressed the issue of what constitutes a compensable injury under § 207(r).  However, two recent decisions in this Circuit have done so.  See Newsome v. City of Philadelphia, Civ. A. No. 19-5590, 2020 WL 6730946 (E.D. Pa. Nov. 12, 2020), and McCowan v. City of Philadelphia, Civ. A. No. 19-3326, 2021 WL 84013 (E.D. Pa. Jan. 11, 2021).  In both cases, the defendants argued that the plaintiff's § 207(r) claims should be denied because the plaintiffs had not pled any compensable injury.  See Newsome, 2020 WL 6730946 at *3; McGowan, 2021 WL 84013, at *16.  The Newsome court acknowledged that the question of what is a compensable injury for the purposes of § 207(r) "is a complicated question" but denied the motion to dismiss the plaintiff's § 207(r) claim on the ground that the plaintiff had alleged that "the lack of a pumping space caused [her] to take time off work to pump and hours of leave have been held to be financial assets." (record citation omitted) (citing Clark v. City of Tucson, Civ. A. No. 14-2543, 2018 WL 1942771, at *6 (D. Ariz. Apr. 25, 2018))).  The McGowan court relied on Newsome in denying the defendant's motion to dismiss the plaintiff's § 207(r) claim, concluding that the plaintiff had "plausibly alleged a compensable injury" and noting that "some courts have found that a plaintiff states a plausible injury under § 207(r) when she alleges that she was forced to take personal or sick leave to pump, because "'hours of leave have been held to be financial assets.'" McGowan, 2021 WL 84013, at *17 (quoting and citing Newsome, 2020 WL 6730946 at *4) (additional citation omitted).

As stated above, the Complaint alleges that, due to PCB's failure to provide a designated lactation space upon her return to work, Plaintiff was forced to spend her paid break time, time

that she could have spent in other ways, rushing home to pump and return to the office within 45 minutes.  (Compl. ¶¶ 35, 48-49.)  Drawing all reasonable inferences in favor of the plaintiff, DelRio-Mocci, 672 F.3d at 245 (citation omitted), Plaintiff's paid break time was a financial asset she was forced to give up in order to drive home to pump.  We conclude that the Complaint thus plausibly alleges that Plaintiff has suffered a cognizable injury.  See Newsome, 2020 WL 6730946 at *4.  Accordingly, we deny PCB's Motion to Dismiss Plaintiff's § 207(r) claim in Count IV.

PCB also asks us to dismiss Plaintiff's FLSA collective action claim in Count VI. Plaintiff's proposed collective action consists of former and current PCB employees who were denied a designated lactation space and/or lactation break time and seeks injunctive relief requiring future compliance with the FLSA, as well as pay and benefits the employees would have received if not for PCB's violations, in addition to compensatory and liquidated damages.  PCB argues that this claim should be dismissed because the Complaint does not allege that PCB denied wages or overtime to individuals who were denied a lactation breaks or designated lactation rooms. However, it is not our role at this stage "to make specific rulings with respect to the scope of damages available."  Id.  (quotation omitted).  Therefore, for the reasons discussed supra, we deny PCB's Motion to Dismiss Plaintiff's collective action claim in Count VI on this basis.

2. *FLSA Retaliation*

PCB also argues that Plaintiff's FLSA retaliation claim should be dismissed because she fails to adequately plead a causal connection between any protected activity and her termination. The FLSA prohibits an employer from discharging or discriminating against an employee "because [the] employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  An FLSA retaliation claim is analyzed under "the familiar burden-shifting framework articulated in McDonnell Douglas."

Cononie v. Allegheny Gen. Hosp., 29 F. App'x 94, 95 (3d Cir. 2002).  Accordingly, "'[t]o state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against [her], and (3) there was a causal link between the plaintiff's protected action and employer's adverse action.'"  Szewczyk v. United Parcel Serv., Inc., Civ. A. No. 19-1109, 2019 WL 5423036, at *6 (E.D. Pa. Oct. 22, 2019) (quoting Bedolla v. Brandolini, Civ. A. No. 18-146, 2018 WL 2291117, at *3 (E.D. Pa. May 18, 2018)).

PCB argues that the FLSA retaliation claim asserted in Count IV of the Complaint should be dismissed because the Complaint does not plausibly allege a causal connection between Plaintiff's complaint to HR and her termination.  However, as we discussed in connection with Plaintiff's Title VII and PHRA claims, the Complaint alleges that Plaintiff notified HR and K.M. several times of her intentions to breastfeed her baby upon her return to work in August 2018. (Compl. ¶¶ 50, 52-53.)  Despite these efforts, PCB did nothing to provide a designated lactation room prior to Plaintiff's return to work.  (Id. ¶ 53.)  The Complaint further alleges that K.M. was highly uncooperative in accommodating Plaintiff's need to express breast milk, commented critically about her choice to breastfeed, and impeded her attempts to use "a private and secure location to express her breast milk."  (Id. ¶ 37.)  The Complaint further alleges that Plaintiff raised her concerns about these issues with HR and that she was fired as a result.  (Id. ¶¶ 38, 45.) "[D]raw[ing] all reasonable inferences in favor of the plaintiff," DelRio-Mocci, 672 F.3d at 245 (citation omitted), we find that these allegations "give[] rise to an inference of causation when considered as a whole."  Ellingsworth, 247 F. Supp. 3d at 557 (citing Marra, 497 F.3d at 302).  As a result, we deny the Motion to Dismiss as to Plaintiff's claim of retaliation in violation of § 215(a)(3) of the FLSA in Count IV.

D.      FMLA Claim

Count V of the Complaint asserts that PCB violated the FMLA by terminating Plaintiff's employment in retaliation for her use of FMLA leave.  "[T]o assert a retaliation claim under the FMLA, the plaintiff must allege facts from which it may be inferred that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to her invocation of rights."  Clark v. Philadelphia Hous. Auth., 701 F. App'x 113, 116 (3d Cir. 2017) (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012)).  Causation may be shown through "either an (1) unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing . . . ."  Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting DeFlaminis, 480 F.3d at 267).

PCB argues that we should dismiss this claim because the Complaint fails to plead a causal nexus between Plaintiff's complaints to HR and her termination.  More specifically, it states that Plaintiff was terminated five months after requesting FMLA leave, that this timing alone is not enough to show a causal link, that the Complaint fails to allege other facts that would suggest causation, and that the Complaint does not allege a pattern of antagonism.  We first note that we measure temporal proximity from a plaintiff's return from FMLA leave to the alleged adverse employment action.  See e.g., Whitman v. Proconex, Inc., Civ. A. No..08-2667, 2009 WL 141847, at *12 (E.D. Pa. Jan. 20, 2009) (finding unduly suggestive temporal proximity when the plaintiff was fired "within minutes of her return to work following the FMLA leave"); Reinhart v. Min. Techs. Inc., Civ. A. No. 05-4203, 2006 WL 4050695, at *11 (E.D. Pa. Nov. 27, 2006) (finding that the timing between the plaintiff's "return from FMLA leave to his subsequent termination"

supported a "causal connection between the adverse employment action and [the plaintiff's] exercise of his FMLA rights").

Here, Plaintiff returned to work from her FMLA and additional unpaid leave on August 6, 2018 and was fired more than three months later on November 29, 2018.  (Compl. ¶¶ 35, 46, 63.) However, "the lack of temporal proximity does not create a *per se* bar to recovery."  Windish, 2021 WL 510292, at *2 (denying motion to dismiss claim of retaliation in violation of the ADA where the defendant argued that "too much time passed between the protected activity . . . and the purported retaliation" (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997))). As discussed above, the Complaint alleges that upon Plaintiff's return from leave, PCB failed to provide her with a lactation room, despite knowing that she required one.  (Compl. ¶ 50.)  K.M. also made critical comments to Plaintiff regarding her need for time off to care for her children after she returned from FMLA leave and otherwise acted with hostility towards Plaintiff regarding Plaintiff's use of FMLA leave.  (See id. ¶¶ 47, 60.)  Plaintiff was put under extraordinary scrutiny and given more work.  (Id. ¶ 58.)  K.M. also pressured her to work more days, including Thursdays and Saturdays.  (Id. ¶ 36.)  PCB failed to adjust Plaintiff's work schedule and gave her a difficult time whenever she needed to take time off.  (Id. ¶ 46.)  Plaintiff made many attempts to address the difficulties she was experiencing, yet PCB did nothing until two months later on October 22, 2018, when an HR representative came to the Branch to address the lack of lactation space.  (Id. ¶ 54.)  Accepting these facts as true, we therefore conclude that the Complaint plausibly alleges a pattern of antagonism on the part of K.M. towards Plaintiff based on Plaintiff's use of FMLA leave throughout the time of her return from her extended leave in August 2018 until Plaintiff's termination in November 2018.  See Amoroso v. Bucks Cty. Ct. of Common Pleas, Civ. A. No. 13-0689, 2014 WL 1284791, at *11 (E.D. Pa. Mar. 27, 2014) ("Plaintiff has alleged sufficient

evidence of ongoing antagonism that occurred after she returned from leave [because she] claims that upon her return to work she was scrutinized regularly and subjected to unwarranted criticism and discipline." (citation omitted)); see also Pulchalski v. Franklin Cty., Civ. A. No. 15-1365, 2016 WL 6902412, at *5 (M.D. Pa. Sept. 27, 2016), report and recommendation adopted, 2016 WL 6879709 (M.D. Pa. Nov. 22, 2016) (recommending that district court deny motion to dismiss FMLA retaliation claim where the plaintiff "alleged that he took FMLA qualifying leave, returned to a workplace where he was greeted with harassment, discrimination, and indifference from management, and just months later was fired").  Accordingly, we deny PCB's Motion to Dismiss Plaintiff's FMLA retaliation claim in Count V.

## IV.    CONCLUSION

For the foregoing reasons, we conclude that Plaintiff's Complaint alleges sufficient facts to state plausible claims for violations of Title VII, the PHRA, the ADA, the FLSA, and the FMLA in Counts I through VI.  We therefore deny PCB's Motion to Dismiss in its entirety.   An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.